Thank you, Your Honor. Good morning. My name is Catherine Meyer. I'm representing the Plaintiffs' Appellants in this case. The Plaintiffs challenge a Department of Agriculture decision not to adopt its 1999 draft policy regarding the treatment of primates in captivity. The agency had previously determined that that policy was necessary to instruct both the regulated industries as to what was required under its existing standard for primates, as to what requirements, quote-unquote. We have a valid regulation that's in place that's been approved by the litigation in the D.C. Circuit between these very parties, right? We have a valid regulation in place. That's correct, Your Honor. And so what happens in this case, the agency considers whether to adopt a policy implicated in that regulation, and then decides, no, it's not going to do it. That's right. Why is something like that reviewable? It's reviewable, Your Honor, because of the plain language of Section 706-2 of the Administrative Procedure Act and the other provisions of the Administrative Procedure Act. Basically, what they've done amounts to the withdrawal of a proposed rule. And on that point, we actually agree with the industry interveners that had this draft policy been promulgated as a final policy, it would have constituted a proposed regulation. And the industry certainly could have challenged it under Section 706-2 of the Administrative Procedure Act as being arbitrary and capricious. Likewise, if the agency had published its final decision in the Federal Register You're giving us hypotheticals of what would have happened if something else had happened, but I still don't understand the answer to my question. Okay. They have regulations, valid regulations in place. They have a policy that is an enforcement policy that says, if you, what we're going to think about is saying, well, if you fall within the safe harbor, we're not going to go after you. And then they say, well, you know, we thought about it, and we really decided we don't want to give anybody a safe harbor. We're going to go after all the bad guys, all the time. We don't want to tie our hands. Why isn't this a heck of a misdemeanor? Because, Your Honor, again, of the language of the Administrative Procedure Act. If I could just spend a few minutes walking you through that language. Section 706-2 of the Administrative Procedure Act. Let's read it together. Okay. 706-2. I have it right in front of me. 706-2, right. Are you with me? I'm with you. Okay. I have it right in front of me. It provides that a reviewing court shall hold unlawful and set aside agency action found to be, under subsection A, arbitrary, capricious, and abuse of discretion otherwise not in accordance with law. Okay. Then you have to — What there helps you? Why is this agency action? Okay. Then you have to — They have decided not to act. Right. They decided we're going to think — we're thinking about a safe harbor. We finally decided, nope. Then, Your Honor, you have to go to Section 551.13 of the Administrative Procedure Act, 5 U.S.C. 551, subpart 13, which defines what an agency action is. I'm with you. Are you with me? Okay. What does it say? Agency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. And then, Your Honor, you have to go to 551, Section 4, to find out what a rule is within the meaning of that section. And under 551, subsection 4, a rule is defined to mean, quote, the whole or a part of an agency statement of general or particular law or policy. That's exactly what the draft policy was intended to do, as made absolutely clear, Your Honor, by the language of that draft policy. As you — What case do you have that an agency, when it considers adopting this kind of procedure, this kind of policy, and chooses not to, that its decision not to go forward with it becomes a reviewable agency action? Well, there's — What's — There's no case, obviously, Your Honor, that has the precise facts of this case, but there are cases that construe what constitutes a final agency action. And the best case for that, I guess, would be the Bennett v. Speer case, in which the court of appeal — the Supreme Court, excuse me, held that a biological opinion that was issued by the Fish and Wildlife Service, an opinion that went to the action agency's actions were going to adversely affect listed species under the Endangered Species Act, was a final agency action for two reasons, Your Honor. But that's not a very hard case. A buy-up is a key step in the administration of the ESA. And, I mean, you need a buy-up in order to be able to go forward with — I believe not only the ESA, NEPA as well. I mean, it's a key step in the process. And if you have a defective one or you fail to find — I can certainly understand that. But this is just a situation where the agency says, look, we thought we'd create a safe harbor. We decided not to create a safe harbor. How can a court second-guess that decision? How can — I mean, that's an exercise of prosecutorial discretion. The agency says, you know, we're thinking that maybe people who comply with a safe harbor will be free from prosecution. But you know what? We decided to go after all the bad guys. We're not going to give anybody a break. We're not going to create a safe harbor. Well, it's a little more — Why exactly isn't that Heckler v. Cheney? Why isn't this — Because, Your Honor, it's not a Heckler v. Cheney case because they're not saying under what circumstances we're not — we're going to choose to enforce or not to enforce the law. Instead — But that's exactly what the policy was. The policy was a safe harbor policy, which what it said was we, the agency, will not — will create a safe harbor. Anybody who sails in the safe harbor will be safe from prosecution. They might still, in some sense, violate the statute. But you know what? We're not going to go after them. We're — you know, so long as a — it goes back and says, well, you know, we thought about enforcement policy, and we decided we don't want to give anybody a safe harbor. Nobody's safe. We're not going to go — we're not going to go after any violator. Anybody who we think violated the statute, we want to be able to go after them. Well, again, Your Honor — I just don't see how a court can second-guess that kind of prosecutorial discretion. Well, of course, Your Honor, in this case, we didn't get the administrative record, so there's no basis upon which — we're not asking you to second-guess. We're just asking the court to exercise jurisdiction at this point. Let me ask the following question, which is a follow-on from what Judge Kaczynski has been asking. One way of looking at this is that there was a proposed interpretive rule. Correct. That proposed interpretive rule was withdrawn. Correct. Is there a case law that says the withdrawal of a proposed interpretive rule is revealable by court? Yes, Your Honor. And we cite some of that case law in our brief. I think that's your short answer to Judge Kaczynski. Okay. And if it's properly explained, well, then fine. The agency is perfectly free to do it. That's right, Your Honor. And, again, it all hinges on what constitutes an agency action. Well, what is that case you're relying on? Well, the case that's the closest in — He said yes, but he didn't follow the case. The case that's the closest in this circuit is the Department of — or Defenders of Wildlife v. Norton case, where there was a proposed rule to list a species under the Endangered Species Act, and then the agency decided to withdraw that proposed rule, and this Court reviewed that decision. But that's a substantive rule. If you list a species under the Endangered Species Act, that becomes an endangered species, and that has substantive consequences. At that point, once it's listed, if you take that species, you commit a federal crime, or at least a regulatory violation. If the species is not listed, then the species isn't covered by the ESA. So that's not an interpretive rule. That is substantive — Well, interpretive rules, like substantive rules, are judicially reviewable under 706-2. The only — I understand that you disagree with the question. But the question you were asked was, is there a case law that says that failure to adopt an interpretive rule is judicially reviewable? And you said, oh, yes, there is. I asked you for an example. Can I grab my brief for a second, Your Honor? Sure. And the example you came up with was not an interpretive rule. So it's back in your court. I mean, this is assuming this is an interpretive rule, which I'm not at all sure is the case. I'm not sure, Your Honor, which of — I think the case of Environmental Defense Fund v. EPA that's cited on page 24 — Isn't that the case you just cited to me? No, I did not. This is a different case, Your Honor. It's a review of an agency's decision to withdraw a proposed reinterpretation of a statutory provision. I think that was an interpretive rule as opposed to a substantive rule. This is the 1988 D.C. Circuit case? Correct, Your Honor. Well, the problem with that case is that was a rule that was required by a, as I call it, consent decree. And so what the court looked at it was and said you were required to adopt this rule, and by failing to do so, you have acted substantively. I don't think that case is going to help you. Well, Your Honor, again, I would stick to the plain language of the Administrative Procedure Act. If you have what constitutes an agency action — Let me get it the other way. What relief can we grant on this case? The relief that we're requesting, Your Honor, is the relief that is allowed under which is to declare the agency's decision to withdraw the proposed policy as arbitrary and capricious and an abuse of discretion, ultimately, assuming you take jurisdiction over this case. Right now, we're just asking you to tell the district court judge — Don't get distracted. I'm sorry. Answer my question. Ultimately, the relief would be to set aside the decision to not to adopt the proposed policy and for the agency to reconsider what it is going to do in light of its findings that the current standard is no longer adequate to promote the psychological well-being of primates, which is what the statutory obligation imposed on the agency is. But in the end, what are you going to get other than a safe harbor? I just don't know. We're either going to get — When we're all done with this process and the agency goes back and reconsiders and let's say it does adopt the rule, what will you have in that point? Will there be anything that will force anybody in the real world to do anything whatsoever? Absolutely, Your Honor. In fact, that's how the industry interveners interpret this proposed policy. They don't like it because it takes — Explain to me how it will force anybody to do anything. It tells the regulated entities what, quote-unquote, must — that's a quote from the draft policy — be considered and included in each of their environmental enhancement plans developed under the standard, the existing standard. What happens if they say, well, that's interesting, but we're not going to do it? Well, they have three choices under this proposed policy, if it were finalized. One, do what the agency said must be included and be in compliance. Two, come up with an alternative idea and get approval from the agency, which the proposed policy for the first time would provide. Or three, do neither of those and take the risk that you'll violate the law. That's exactly what happened in Bennett v. Speer, Your Honor. But wait a minute. That's where they are right now. They take the risk that if they don't comply with the law, that they might violate the law. But now they're going to — Essentially, there is nothing about this thing that compels them. It's a failure to do what the regulation provides will expose them to additional liability or greater risk or anything like that. All this does is says, you know, we create a safe harbor. If you choose not to sail into it, you will be exactly where you are today. I just have a difficult time figuring out how this has an effect on the real world. I understand, Your Honor. And, again, I really do urge you to read the language of the applicable statutory provisions of the Administrative Procedure Act, which make it very clear, particularly when you combine it with what the agency itself has said this policy is intended to accomplish, it makes it very clear that what we have here is a withdrawal of a proposed rule under the Administrative Procedure Act. That's exactly how the industry interveners construed this as well, Your Honor. Do you understand the difference between withdrawing this proposal and withdrawal of a listing of a species as endangered? You understand that difference? Yes. You may not think the difference is significant, but you understand if a species is listed as endangered, at that point, as soon as that regulation goes into effect and becomes final, if you take that species, you become a criminal. I believe, I forget whether there are criminal sanctions, but you become a lawbreaker by violating the regulation. So as soon as the regulation goes into effect, everybody in the world now has a strong law-driven incentive not to do this thing, which has now been made unlawful by the regulation. This policy, you can keep doing what you're doing. There's nothing that attaches to it. If it comes to court, they don't go into one of the safe harbors. A court won't say, oh, we give deference to the agency in interpretation of the statute, because it doesn't interpret the statute. All it says is we won't go after you if you stay under the safe harbor. So I am not sure where the redressability is here. I agree, Your Honor, that there are differences in kind between the listing proposal and the proposal at issue here, but they're both judicially reviewable under the plain language of the Administrative Procedure Act. Just like Bennet v. Speer. Why are they both? I can see where a change in the law, when the agency changes the law, it changes real-world behavior, yes, you say that's judicially reviewable. But here, it will have no required effect on anybody else. I mean, people can just keep doing what they're doing. Under that construction, Your Honor, if this rule — I know I'm not supposed to ask you questions, but if this rule became final, if this policy became final, then if that's the construction you give to this set of circumstances, then the industry would have no ability to challenge the agency's final rule. That sounds fair. Well, I think — That sounds exactly right. I think Bennet v. Speer — But again, I'm not here to answer questions. Correct. Well, no, no, not because I haven't taken the offense. I mean, that's something I had to see briefed, and it's hard to answer that question. But I think the implication of what you're saying is absolutely right. If an agency chooses as a matter of prosecutorial discretion to create a safe harbor, I can't see where anybody in the real world can complain about it. All the agency is saying at that point is, we have told the world that if you comply with a safe harbor, we're not going to go after you. What's the beef? You choose not to stay under the safe harbor? That's perfectly fine. I mean, if I could just try your — one more time, Your Honor, to use the analogy of Bennet v. Speer, because, Your Honor, there we had a biological opinion, and the — but the agency taking the action ultimately decides what it's going to do. It could ignore that biological opinion. It may do so at its peril. The Court held that what is significant for finding a final agency action is whether or not that biological opinion has some determinative effect on the action agency. And here, particularly when you have Nabor, the intervener, coming in and saying, this certainly would have a determinative effect, this policy, if finalized, would take away all of our discretion that we heretofore have enjoyed under the current standard. If this policy were enacted, we would no longer have any discretion. We would have to include all of these elements in our environmental enhancement plan. To me, it's a very analogous situation. You've got about two minutes. I'd like to save it for rebuttal, if I could. Thank you, Your Honor. Are you splitting your time over there? May it please the Court, I'm John Cappell with the Appellate Staff Civil Division, U.S. Department of Justice. Can you speak up, please? Yes, Your Honor. May it please? I'm John Cappell with the Appellate Staff Civil Division, U.S. Department of Justice, and I'm representing the federal appellees, Secretary of Agriculture and other officials who are in their official capacity. And I will be sharing my time with Mr. Long from the National Association of Biomedical Research. And frankly, I really have nothing to add to the colloquy between the Court and opposing counsel and to what we have said in our briefs and to the district court decision. the position that this is not redressable, that there is simply no action to be reviewed because this does not compel anybody to do anything, there's no real-world effect. That's correct, Your Honor, and there's certainly no final agency action. Arguably, there's no agency action at all under the APA, but there's certainly no final agency action. Let's ask you, if I may, the question that Judge Fletcher asked. Are there cases out there saying that failure to adopt an interpretive rule is reviewable? No, Your Honor. To my knowledge, we have not discovered any. None of the cases that the plaintiffs have cited are all distinguishable, as we've indicated in our briefs, but we have not found any case so holding. And we believe that that's consistent. I mean, you think the position that this is not an interpretive rule anyway, I gather, because it's a policy, it's a prosecutorial policy in your view. Yes, Your Honor. And so it's not even an interpretive rule, but let's, I mean, that's a debatable point. If we were to treat it as an interpretive rule, your position is there are no cases out there saying that failure to adopt an interpretive rule is reviewable. That's correct, Your Honor. And that, of course, that would also — It's a substantive rule, like the listing of failure to list something as an endangered species. For example, in this situation, if the agency had not adopted the regulation that was compelled by statute, it was under a statutory obligation to promulgate the regulation. That's what it did in Section 3.81. That was challenged unsuccessfully by Plaintiff ALDF and others in the D.C. Circuit. At the time you — at the time your agency proposed this interpretive rule, it was not clear to that agency that its existing regulation would be upheld as sufficient under the statute. Is that right? I mean, I think that's why you proposed it. Well, Your Honor, the case was pending in the D.C. Circuit at that time. At that point, it was uncertain as to whether your existing regulation was sufficient. It had not been finally decided, yes. So that's — it was being litigated. Right. So it's not — So sufficient, you mean, whether it was valid? Whether it was sufficient to implement the statute. Right. That is to say, you might have needed more. You might have needed this proposed rule to implement the statute. Otherwise, I mean, as I look at the sequence of these things, you have a rule, you get sued. The argument in the lawsuit is that a rule that you now have is insufficient fully and properly to implement the statute. While that litigation is going on virtually interminably, you propose this rule. When you finally win, you get — you lose on your standing argument, but you finally win on your argument that the existing rule is sufficient. Lo and behold, you say, well, you know, I guess we don't need this proposed rule. I mean, that's the sequence. It seems to me it's sort of one, two, three. The reason you proposed it was you had the pending litigation. The reason you withdrew it is the pending litigation went away. Well, Your Honor, certainly the record doesn't reflect that that was the motivation for it. But in any event, even if the original rule, if the regulations had been struck down, that would not have transformed this into the new regulation. There would have had to have been a new regulatory process to promulgate regulations. This might have been folded into that, but this was a separate and independent matter that was arguably supplementing the — or potentially supplementing the existing regulation, but it was not compelled by statute. What I'm about to say draws an inference that may not be justified. I mean, I understand that some winning arguments, because they're so obviously correct, can be stated in 35 words or less, and some other arguments take a lot longer. But I was struck by the attention you paid in your brief to the standing argument, 15 pages or so, by comparison to five pages on all this administrative stuff. The standing argument, I gather, you didn't even make in the district court. No, Your Honor. We did make it. We did make it in the district court. The district court chose not to — The court didn't pay any attention to it. — to decide it and went directly to the APA issues. And now you lead with it for 15 pages before you get to the five pages on the administrative stuff. Well, Your Honor, that is because, in our view, first, the APA issues are relatively clear, and secondly, it's much harder to present the full-fledged standing issues, which of course were the subject of an en banc decision in the D.C. Circuit and involved the three factors, the three standing factors. It really was — it was not possible to really do that in abbreviated form. But no significance flows from that. For us to hold that there's no standing here, would we have to disagree with the D.C. Circuit? Not necessarily, Your Honor. You could distinguish this case on the basis that, with respect to the second and third standing prongs, the causation and redressability. Here, the plaintiff's claim is even more attenuated because they are not challenging regulations which were compelled by statute, but simply this additional supplemental draft policy statement. So their prospect for relief was even less. And as Judge Kaczynski has pointed out, since we're talking about essentially a safe harbor requirement, there's no reason — it's not at all clear that they would have benefited from this in any respect. So it's totally speculative. Well, the presence of the intervener does suggest the contrary. Yes, well, of course, the intervener has its own interests. Well, I understand, of course. And the presence of the intervener here to protect its own interests suggests the contrary. From their perspective, yes. There's no doubt that — People might argue with them as to what they think they're likely to do if this proposed interpretive rule were to go forward. But again — May I just say policy statement. I don't want to attach that label because it's got a significance that we have in front of us as a question. But again, as Judge Kaczynski has pointed out, it's not even clear that the intervener would really be in a position to challenge that either because it's a safe harbor and it doesn't really require them to do anything. And arguably, at most, they might benefit from it because then it becomes clear what they could do to satisfy the requirements of the regulations. Well, that's sort of my biggest problem. I mean, essentially what this is, it's a policy that limits the agency's prosecutorial discretion. And I'm not sure how a court or a private party can force an agency to say, we are going to tell you who we're going to go after and who we're not going to go after. That's sort of — it's essentially Heckler v. Cheney. Your Honor, I'm in complete agreement. I'm sorry about Heckler v. Cheney, but — That's correct. It's correct. It's Heckler v. Cheney in the context of rulemaking rather than an individual prosecutorial decision. But it is Heckler v. Cheney. I completely agree. And if there are no further questions, I would turn the floor over to Mr. Long. I do have one question, and I think I know the answer, but I'm not sure. Do you seriously insist that the emotional injury claimed by at least two of the individual plaintiffs, assuming redressability, is insufficient injury? I mean, that's what you say in your brief, but do you really mean that? Well, yes, Your Honor. For the reasons stated in the dissent in ALDF and the D.C. Circuit, we believe that this is simply too subjective to constitute. It's not like the environmental cases where there's a clear environmental degradation of some sort or even cases where animals are being physically decimated, killed, or wounded. There you have a tangible and concrete injury. But here, because of the nature of the plaintiff's claim, it's simply too subjective and lacking in concreteness, in our view, to constitute an injury in fact, as the dissenters stated. But if that's right, I think you're casting doubt on the entire notion of aesthetic injury, emotional response, and so on. Your Honor, again, I would respectfully disagree for the reasons that I just stated, because in those – in the other cases, there is a much clearer, more definable injury in terms of environmental degradation or actual physical harm to animals. But that's injury to the environment. We're talking about injury to the person whose emotional reaction is at stake. Right. But in those contexts, it is invariably – it flows from an injury that is more concrete and tangible than the plaintiff's – Injury to whom? The injury to the observer from having to see that, that sort of spoliation of the land. How do you know that that's so? Meaning, how do you know that the injury to the observer when he or she sees a tree cut down is greater or less than the injury to the observer when he or she sees her favorite chimpanzee taken away, locked in a cage, and I'll describe the horribles. Your Honor, perhaps I wasn't clear enough on that. It's not the injury to the observer. It's not that the injury to the observer is any greater or lesser. It's that for the Court, it is clear, for the Court and other parties, it is much more objectively demonstrable the aesthetic harm than the type of injury that the plaintiffs are alleging here. And so I turn it over to Mr. Long. I urge the Court to affirm. Thank you. You may proceed. May it please the Court, I am Robert Long, representing the Intervenor National Association of Biomedical Research. On standing, I would simply say, if you're going to make the standing argument, it does take a number of pages to make the argument. The APA argument, which we think is very strong, can be made in just a few pages. So I don't think, in this case, length reflects that one argument is stronger than the other. I would also say, as I understand the Supreme Court's decision in Steele Company, whether there's final agency action under the APA is surely a jurisdictional issue. So the Court can decide either one of these issues, just as the district court did. It doesn't have to decide both. On final agency action, I think the only point I would add, there were a number of references to the Supreme Court's decision in Bennett v. Speer and talk about the definitions of final agency action and so forth. Well, in Bennett against Speer, it says, it gives the definition of final agency action. Two conditions must be satisfied. First, the action must mark the consummation of the agency's decision-making process. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow. Well, you know, they thought about doing this draft policy, and then they decided not to do it. They're going to put together some best practices guidelines with the National Institutes of Health. So, I mean, whether they've really consummated their process, I don't know. They've got a different process. They've started off on. If they had adopted this policy statement, which in the end they've withdrawn, or I'm not sure why I should say maybe tried to withdraw, would you have been able to challenge it? Well, I think we would probably have had a disagreement with the government at that point. Our view would be that it was some kind of an interpretive rule. They were saying what they thought. Say had they adopted it. Right. It would have been, in your view, that adoption would have been, in your view, a final action that you could have challenged. Yes, that would have been our view. I think their view is, well, you know, we were saying that this was one. If that's so, that is to say if the adoption would have had sufficient legal consequences that it would have been final agency action such that you could have challenged it, why is it not also true that the refusal to adopt it has sufficient legal consequences that it's not final action? Well, because it doesn't change the status quo. I mean, the agencies think about doing things all the time. You're not following me. That is to say, I think you've just gone this far with me, and that is to say had they adopted it, it would have had legal consequences such that it could have been challenged. That's our view. Now, not adopting it, of course, has legal consequences in the sense that those legal consequences that you feared will no longer take place. I mean, it's just a total flip side, so why is that not a final action? But I don't think that's the way administrative law works. I mean, maybe a good way to explain it is there is a you can petition for rulemaking. I mean, that's actually something that's open to the plaintiffs here. And under the APA, if you actually ask for a rule, then the agency, if it doesn't want to do it, it has to give some sort of explanation. It gets extremely deferential review, exactly because of Heckler against Cheney, because not having a rule, I mean, there are really potentially infinite number of rules an agency might think about. I'm not here discussing what the standard of review would be or how deferential it would be if the agency comes in and explains. I mean, that's a different question. The question really is whether or not they should be asked to explain. Right. Well, I would like to briefly come, I want to answer your question, but I actually think if you ever got to that issue because it would be such deferential review, they have given an adequate explanation. You actually were giving it yourself. It has to do with the context in which this occurred, the lawsuit, what they were arguing to the D.C. Circuit. I didn't hear that explanation. I mean, I advance the explanation, but I don't read that explanation in any word that's been written by the agency as representative. Well, I mean, you get admittedly a very cursory explanation in this statement that we have decided not to proceed and we're going to put together some best practices guidelines with the NIH. But as you would see in our brief, the intervener's brief, you know, clearly this draft policy came out in the midst of the lawsuit when the district court had actually held that the regulations were insufficient. Then while it was pending, the agency argued to the court the regulations are sufficient, and the D.C. Circuit, in its opinion, I mean, if you just read it, they said, you know, there are many different kinds of primates. They have many different needs. We have situations where, you know, they may be exposed to disease. There are, you know, lots of situations where we would not necessarily want to have them in social groups, even when they're having the so-called species-typical behavior. Let me ask you the following question. Is it your position, and I'm not asking you to concede characterizations as applied to the facts of this case for the moment, so this is a relatively abstracted question. Is it your position that if an agency proposes an interpretive rule, and so let's assume that that characterization is readily, easily, properly applied, proposes an interpretive rule, and then without explanation withdraws, that that withdrawal without explanation is not judicially reviewable? Yes. My contention is it's not final agency action. And I think that's correct, but if you ever ---- And it's not final action because? Because the agency hasn't done anything. It's not ---- It has not changed any legal rights or obligations. I mean, it's ---- If the agency merely thinks about doing something but decides not to act, nothing has happened. If that's so, how do you respond to the cases where the proposed rule is not an interpretive rule but a proposed rule to list an endangered species? Again, they haven't done anything. Well, there are lots in a number of the cases that say it's site. I mean, where Congress has told them, has told the agency, you need to do something, and, of course, they have to do it. You're not focused on my question. My question is directly in response to your answer. Your answer as to why this was not reviewable was, well, the decision not to go forward with the proposed rule is not reviewable because they have done nothing. Right. But that obviously is not a sufficient explanation if the proposed rule is, for example, proposed to list an endangered species. They propose it. They withdraw it. Right. They've done nothing. But our case law says that's reviewable. So your answer is not right. There's got to be another rationale. What I need to add to my answer is they have done nothing, and they are not required to do anything. Congress told them to do regulations. But still, that's not a sufficient answer because while the adoption of a listing of an endangered species will require others then subject to the rule to do something, there's nothing in the premise of the question that the agency is required to adopt this particular listing. They might or might not. Yet, nonetheless, the refusal, the withdrawal is reviewable. So you still haven't given me an answer as to why. But, Your Honor, it's listed, right? I mean, that's a whole other set of cases. No, it's not listed. The proposal would be to list it. To list it. And then they withdraw the proposed listing, and the case law says the withdrawal has to be explained. But I still think if you study the Endangered Species Act, there's a... They deal on what the agency's mandate is. Yes. For listing, if Congress, I mean, I don't know about HUD. Perhaps Professor Fletcher does. I don't know it. But if Congress says the agency shall list every endangered species, I mean, let's say you use something like that in Oracle, then there might very well be a mandate to in fact list every species, which creates a legally enforceable obligation that can be reviewed. It's sort of a failure to list. Whether the agency proposes a listing or withdraws it, or maybe doesn't even commence the proceeding to list the species, maybe that's a legally enforceable obligation. That would depend. That's my understanding of the law. But I do agree with Judge Fletcher that you jumped over the... for the implications, that once you say that this rule, had it been adopted, would be reviewable, I think you are in a very difficult position to say that the non-adoption is not reviewable. Well, I mean, the government disagrees that it would be. But I don't think that's... I mean, if the government does something that causes legal obligations or changes the legal circumstances, that would be reviewable. If it doesn't do it and it was not required to do it... You took the leap. You asked the question and you jumped at the bait. But then just briefly, I mean, if you took that leap with me, it's absolutely clear, you know, for reasons very similar to Heckler against Cheney, that any judicial review of that kind of determination has to be the most deferential. That question is not in front of us at the moment, I think. Is that right? Well, I mean, you know, Justice — Judge Posner said in a statement that's often been repeated, you know, under this Chenery doctrine, you can't put words in the agency's mouth, and usually you have to remand. But if we are sure that the agency, if we remanded the case, would reinstate its decision, if, in other words, the error is harmless, a reversal would be futile, and Chenery does not require futile gestures. This is... Oh, I see. So you're saying their course is fixed and they will give us a sufficiently elaborate explanation. They're not going to change their mind because they've decided... Absolutely. I mean, you can see it right in the D.C. Circuit's decision. Thank you, Your Honor. Okay. Okay. I believe you had a couple of minutes left for rebuttal. Did you have a question? Thank you, Your Honor. I think this colloquy with the intervener's attorney really sort of highlights what our position in this case is. There is no dispute that both substantive rules and interpretive rules are reviewable under 706-2 of the APA. There's plenty of dispute on both counts. There's nothing but dispute on interpretive rule, and as to substantive rule, it may well depend on what the congressional mandate is. So this is not common ground whatsoever. Well... Assuming that there were common ground, what was your point going to be? Again, Your Honor, a rule is an agency action under the definitions of the APA, and agency actions are reviewable by this Court. Answer me this. How can a court, which is a judicial body, force an agency of the United States to handcuff itself by adopting a safe harbor, which has the effect of saying, we will not, people who sail in the safe harbor will be saved from prosecution by us. Even if it turns out they violate the statute, even if it turns out that, you know, we discover that, you know, the safe harbor was wrong, and they're really... How can a court force an agency to limit its discretion by adopting this safe harbor provision? I don't understand... You can't force it, Your Honor, but what you can do is determine that what the agency has done here, even if it's an exercise of its discretionary authority, by withdrawing this proposed rule, policy, whatever you want to call it, is an abuse of discretion. But ultimately, if this is reviewable, we're going to have to be able to say, the reasons you gave for this are just no good. That's right. Therefore, you must adopt the policy. Ultimately, the punch behind our review is that at some point we have to tell the agency, you're just going to have to adopt it. Here's the punch. Because your reasons for not adopting it are not good enough. And here's the punch, Your Honor, that what Congress has directed this agency to do is to promulgate minimum requirements that are adequate to promote the psychological well-being of primates. And that's what they did in the regulation. The agency has now determined, and that determination is set forth in the draft policy, that the standards they came up with in 1991 are no longer adequate to fulfill that statutory obligation, and something more is needed. And what they came up with were the requirements that they embodied in this draft policy. And now they have withdrawn that. It seems to me what you're really complaining about is the failure to amend the regulations. That what they have — that what they have failed to do is change regulations in light of changed circumstances. It seems to me that's your beef. Our — our complaint, Your Honor, is that they were going down a path one way where they said the standard is no longer adequate. We think we need to, both for the regulated entities and, by the way, Your Honor, also because our inspectors have no idea what is required, allowed under these regulations. We have to give them more specific requirements that must, and that's their word, be included in these environmental enhancement plans. And because the agency is under an obligation to promulgate adequate standards, its failure to — its withdrawal of this — this draft policy under these circumstances with no explanation whatsoever is — is reviewable by this Court. And we would ask the Court to remand this case to the district court for that purpose. And doesn't — doesn't your argument suggest the reason why the government was so reluctant to accept Judge Fletcher's suggestion that the withdrawal was because of the D.C. case? I'm not sure I understand your question, Your Honor. The government attorney wouldn't buy Judge Fletcher's suggestion that the regulation process stopped because of the decision of the D.C. Circuit. Doesn't your — That's right, because they — Doesn't your argument suggest the real reason why the government — Because they want to be able to exercise their discretion to issue more regulations. I mean, even the D.C. Circuit — namely, that the old regulation, which was way out on the cutting edge of things anyway, was less than adequate in the light of new developments. That's right, Your Honor. And even the D.C. Circuit, in a decision in the Glickman case, when it was deciding that case based on the record that had been compiled at — in 1991, said the agency is free in the future if it decides these regulations are not adequate to augment these standards with additional standards. And that's exactly what they propose doing here. It falls within the plain language of an agency rule under the APA, and it's reviewable by this Court, by the district court. All clear. Thank you. Thank you.
judges: Kozinski, W. Fletcher, Holland